# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Case No. 08-11887<br>) Hon. George C. Steeh<br>) |
| GREGORY N. MCKNIGHT, and LEGISI HOLDINGS, LLC, | )<br>)<br>) |
| Defendants, | )<br>) |
| and | )<br>) |
| LEGISI MARKETING, INC., LIDO CONSULTING, LLC, HEALTHY BODY NUTRACEUTICALS, LINDENWOOD ENTERPRISES, LLC, DANIELLE BURTON, THERESA BURTON, and JENNIFER MCKNIGHT, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Relief Defendants. | )<br>)<br>) |

## **FOURTEENTH INTERIM REPORT OF RECEIVER**

- 2 -

Robert D. Gordon (the "Receiver"), by his counsel, Clark Hill PLC, submits this Fourteenth Interim Report regarding the status of the administration of the Receivership Estate (defined below) in connection with the above-captioned case.

### *I.  Background*

On May 5, 2008, the United States Securities and Exchange Commission (the "SEC") filed a complaint (the "Complaint") against Defendants Gregory N. McKnight ("McKnight") and Legisi Holdings, LLC (referred to collectively with Legisi Marketing, Inc. as "Legisi"), and Relief Defendants Jennifer McKnight, Theresa Burton, Danielle Burton, Lindenwood Enterprises, LLC, Healthy Body Nutraceuticals, and Lido Consulting, LLC, alleging, among other things, violations of various federal securities laws.  In its Complaint, the SEC alleges that Defendant McKnight, through his control of Defendant Legisi, raised approximately $72 million from investors in violation of federal securities laws.  It is further alleged that McKnight and Legisi invested approximately $33 million of such funds in various investments such as foreign currencies, commodity futures, shares and warrants in thinly-traded over-the-counter stocks, in one privately-held company, and in one real estate investment partnership.  Concurrently, the SEC filed an *Ex Parte Motion for the Appointment of a Receiver.*

On May 5, 2008, the Court entered its *Order Appointing Receiver* (the "Receiver Order"), appointing Robert D. Gordon as Receiver for the estate of

Gregory N. McKnight and the estates of every corporation, partnership, trust and/or other entity which is directly or indirectly owned by, or under the direct or indirect control of, McKnight (collectively, the "Receivership Estate"). Pursuant to the Receiver Order, the Receiver has a number of powers and duties in administering the Receivership Estate including, among other things, (i) taking custody, control, and possession of all funds, property, premises, leases, and other assets of, or in the possession or under the control of, the Receivership Estate, (ii) managing, controlling, and operating the Receivership Estate, and (iii) making payments and disbursements from the funds taken into his custody, control, and possession.

Since the inception of this case, the Receiver has filed thirteen interim reports in order to update the Court, investors, and creditors regarding the status of these proceedings. Those reports, along with additional updates, have been posted on the Receiver's website dedicated to this case. The most recent interim report was filed on July 10, 2018 [Dkt. No. 767], providing an update through June 30, 2018. The Receiver now files this Fourteenth Interim Report, discussing the status of the Receivership Estate and actions taken by the Receiver, specifically from June 30, 2018 through July 9, 2019.

## *II. Summary of Actions Taken Since the Last Interim Report*

### A.     **Recoveries from "Net Winners"**

Through a combination of demand letters and lawsuits, the Receiver has recovered $573,984.59 from investors who received more money from the Ponzi scheme than that which they deposited into the scheme ("Net Winners"). There are no new developments to report in this regard since the last interim report, and the Receiver does not expect further Net Winner recoveries other than from collection on judgments against certain Net Winners.

### B.     **Recovery from e-Bullion**

As discussed in the Ninth Interim Report, on June 6, 2013, the Receiver filed his *Motion for Order Authorizing the Receiver to Receive and Collect Any Remission or Restoration of Forfeited Funds Recoverable by or Payable to Legisi Investors Pursuant to Forfeiture Actions Brought by the United States* (the "e-Bullion Claims Motion"), and on August 6, 2013, the Court entered an order granting the Receiver's e-Bullion Claims Motion. This matter pertains to the U.S. Department of Justice's liquidation of the web-based money transfer business formerly known as e-Bullion a/k/a Goldfinger Coin & Bullion ("e-Bullion"), which web site was often used by, among others, Legisi and its investors to transfer funds. The U.S. Government seized e-Bullion assets located in the United States and Australia. For the e-Bullion assets in the United States, the Department of

Justice (the "DOJ") established a remission process in the Central District of California to administer claims of former accountholders of e-Bullion.

Pursuant to the e-Bullion Claims Motion, the Receiver submitted claims to the DOJ remission process, seeking to recover funds asserted to belong to victims of the McKnight/Legisi Ponzi scheme. The claims submitted by the Receiver total in excess of $36 million. The Receiver provided additional information as requested by the DOJ in the course of the DOJ's analysis of claims received.

In November 2015, the Receiver received a distribution from the U.S.-seized assets, in the amount of $8,275,265.97 - - an extremely positive result for the Receivership Estate and the victims of the McKnight/Legisi Ponzi scheme. In May of 2016, the Receiver distributed approximately 50% of the funds he received from the U.S. e-Bullion remission process. In consultation with the SEC, the Receiver retained the balance of the remission funds because of uncertainty over the tax status of the remission funds. To resolve that question, the Receiver sought a private letter ruling from the Internal Revenue Service that the e-Bullion funds are not taxable to the Estate. On February 7, 2017, the IRS issued a private letter ruling that the e-Bullion remission funds are not taxable to the Estate. The private letter ruling enabled the Receiver to make the Third Interim Distribution in July 2017.

With respect to the Australia-seized assets, on April 19, 2019, the Receiver received a distribution from the DOJ Remission administrator in the amount of $6,841,188.33. On July 26, 2019, the Receiver filed a motion for court approval to distribute the entirety of this amount to Legisi victims. Said motion is pending as of the time of this Report; if approved, the Receiver will promptly proceed to make this fourth distribution.

### C. Liquidation of Stock Holdings

As discussed in detail in the Receiver's prior interim reports, the Receivership Estate owns a large block of stock in Erin Energy Corporation ("Erin Energy") f/k/a Camac Energy, Inc. ("Camac") f/k/a Pacific Asia Petroleum, Inc. On April 22, 2015, Camac implemented a 6-to-1 reverse stock split and changed its name to Erin Energy and began trading as Erin Energy on April 23 (AMEX ticker: ERN).

The Receiver worked throughout this case with FINNEA Group, LLC ("FINNEA"), to dispose of the Erin Energy stock holdings. The Receiver and FINNEA worked diligently to monitor the activity of the company and analyze the strategic disposition of the stock. In light of the relatively large stock position held by the Estate and the generally low trading volumes in the stock, the Receiver worked with FINNEA to take a deliberate and controlled approach to the

liquidation of the Estate's position, to try to avoid negatively affecting the share price.

Unfortunately, on April 25, 2018, without any advance warning, Erin Energy commenced a chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of Texas. The bankruptcy filing appears to have been precipitated by the enforcement (as alleged by Erin Energy, inappropriately) against Erin Energy of a judgment – obtained against a non-Erin Energy entity – and the shutting down of Erin Energy's oil production operations. The enforcement action and subsequent bankruptcy filing destroyed the going-concern value of Erin Energy, and it was unable to successfully emerge from the bankruptcy and resume operations. On July 13, 2018, the case was converted to a Chapter 7 liquidation proceeding. No distribution on account of the Receivership Estate's equity interest is expected.

Prior to these latest events, the Receiver was able to successfully realize net proceeds in the amount of approximately $3.4 million on sales of approximately 74% of the Estate's entire stockholding (172,500 shares post-reverse stock split remaining unsold).

    D.    **Litigation**

        1.    **FINRA Litigation**

- 8 -

As was also discussed in the Receiver's prior reports, the Receiver filed a Statement of Claim with FINRA against Alan Goddard ("Goddard"), Michael Lichtenstein ("Lichtenstein"), Eric Bloom ("Bloom"), and Allen Goddard McGowan Pak & Partners LLC, now known as Sierra Equity Group LLC, as successor to Sierra Equity Group, Ltd. ("Sierra Equity") (referred to collectively as the "Respondents"), alleging violations of federal and state securities laws, common law fraud, breach of fiduciary duties, and fraudulent transfers, among other claims, and seeking damages totaling approximately $21 million. This matter was tried for over four (4) weeks before a panel of three independently appointed FINRA arbitrators.

The FINRA arbitration was scheduled to resume during the weeks of March 2, 2015, March 23, 2015 and May 4, 2015. However, just prior to the March 2 resumption of hearings, the parties engaged in settlement discussions. On March 20, 2015, after extensive negotiations, the Receiver, Goddard, Lichtenstein, Bloom, and Sierra Equity executed a Settlement Agreement (the "Settlement Agreement"), in which the parties, among other things, agreed to settle all matters which were asserted or which could have been asserted in the FINRA arbitration, subject to entry of an order by this Court approving the Settlement Agreement.

On May 13, 2015, after receiving $100,000 pursuant to the terms of the Settlement Agreement, the Receiver filed a motion seeking this Court's approval

of the Settlement Agreement [Dkt. No. 627] (the "FINRA Settlement Motion"). The Settlement Agreement provided, in part, for the Respondents to pay to the Receiver the aggregate sum of $2,750,000 pursuant to a payment schedule that ran through September 18, 2018. The terms of the Settlement Agreement are more fully set forth in the FINRA Settlement Motion. The Settlement Agreement represented a reasonable and beneficial resolution of the FINRA arbitration for the Receivership Estate and its beneficiaries.

Pursuant to a hearing conducted before the District Court on July 14, 2015, the Court entered an order on July 16, 2015 [Dkt. No. 634], approving the FINRA Settlement Motion. On or about October 6, 2015, the FINRA Panel entered a Stipulated Award pursuant to the Settlement Agreement. As of the date of the Thirteenth Interim Report, the Receiver had received $2,625,000 of the settlement amount and was awaiting the last payment in the amount of $125,000, due on September 18, 2018. That payment has been received by the Receiver, resulting in full payment of the settlement amount of $2,750,000.

### 2. Royal Palm Litigation

After the FINRA arbitration was resolved, the Receiver filed a motion to reopen a previously filed lawsuit against the Royal Palm Real Estate Investment Fund, I, LLLP, Royal Palm Investment Management Company, LLC, Royal Marketing Services, LLC, Robert Rosetto, Roxanne Rosetto, and Bruce Rosetto

(the "Royal Palm Lawsuit"). The Court lifted the stay and issued its scheduling order on December 27, 2016. On January 19, 2017, the defendants in the Royal Palm Lawsuit filed a motion in the United States District Court for the Eastern District of Michigan to transfer the case to the United States District Court for the Southern District of Florida. The Court denied the motion to transfer.

The defendants also moved to dismiss the Receiver's action for failure to state a claim on which relief can be granted. The Court heard argument on that motion on April 19, 2018. On May 25, 2018, the Court issued an opinion and order that granted in part and denied in part the defendants' motion to dismiss. While some claims were dismissed, the Receiver believes the primary claims remain intact and form the basis for a substantial recovery.

Recently, the Receiver moved for partial summary judgment on certain of his claims against the defendants. The defendants have moved for summary judgment, seeking dismissal of all of the remaining claims against them. The motions will be fully briefed in August 2019, with a decision expected thereafter.

### E. Fourth Interim Distribution

Total distributions to date are $9.5 million, representing a return of approximately 22% on a total of $44,067,387.88 in allowed claims. Concurrently with the filing of this Report, the Receiver has sought Court approval to issue a fourth interim distribution to creditors in the amount of $6,841,188.33. If

- 10 -
221901030.2 30711/122570

approved, then upon payment of the fourth interim distribution, total distributions will represent a return of approximately 31% of all allowed claims. Upon payment of the fourth interim distribution, the Receivership Estate is anticipated to still retain approximately $1.5 million to fund ongoing activities and administrative expenses of the Receiver and, ultimately, a further distribution to creditors.

### *III.  Conclusion*

In sum, the Receiver continues to effectively pursue and liquidate assets of the Receivership Estate. Going forward, the Receiver intends to continue, among other things: (a) pursuing the Estate's claims claims in the Royal Palm litigation; and (b) pursuing collection of judgments previously obtained against Legisi insiders, Net Winners, and others.

                Respectfully submitted,

                CLARK HILL PLC

By:   /s/ Jason R. Canvasser
       Edward J. Hood (P42953)
       Jason R. Canvasser (P69814)
       151 S. Old Woodward Ave., Suite 200
       Birmingham, Michigan 48009
       (248) 642-9692
       ehood@clarkhill.com
       jcanvasser@clarkhill.com

Date: July 29, 2019       *Attorneys for Robert D. Gordon, Receiver of the Estate of Gregory N. McKnight, et al.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2018, Deneen Miller electronically filed the *Fourteenth Interim Report of Receiver* with the Clerk of the Court using the ECF System which will send notification of such filing upon all counsel of record.

Respectfully submitted,

CLARK HILL PLC

By:     /s/ Jason R. Canvasser
Jason R. Canvasser (P69814)
151 S. Old Woodward Avenue
Suite 200
Birmingham, Michigan 48009
Telephone: (248) 642-9692
Facsimile: (248) 642-2174
jcanvasser@clarkhill.com

*Attorneys for Robert D. Gordon, Receiver of the Estates of Gregory N. McKnight, et al.*

Date: July 29, 2018